**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ORLANDO A. ACOSTA** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO.  20-2528** |
| | : | |
| **GOVERNOR TOM WOLF,** *et al.* | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                                                   **June 30, 2020**

Philadelphian Orlando A. Acosta wants us to place him on Pennsylvania's November 3, 2020 general election ballot as an independent candidate for the United States House of Representatives. Without paying the filing fees, he *pro se* alleges Pennsylvania's Governor and Secretary's emergency orders to mitigate the COVID-19 pandemic impede his ability to presently acquire the 1,000 signatures due by August 3, 2020 and thus apply for a job with the federal government enforcement.  He reaches to claim these now-expired emergency orders impede his right as a person receiving disability payments to apply for employment as a Congressperson under the Civil Rights Act of 1964 and the Americans with Disabilities Act.  As he hopes to proceed without paying fees, Congress requires we screen his complaint before proceeding. After we dismissed his first complaint for failure to state a claim under the Equal Protection Clause and the Americans with Disabilities Act, Mr. Acosta amended his complaint requiring we screen his new civil rights and disabilities employee applicant claims. He is not applying for a job with the Commonwealth or the United States. His claims are frivolous.  After screening, we dismiss Mr. Acosta's amended complaint with prejudice.

I.      **Alleged *pro se* facts relating to the 2020 general election.**

In this second attempt, Mr. Acosta alleges the Governor's now-expired COVID-19 emergency orders preclude him from getting the required number of signatures from registered voters to sign his "nominating papers" to appear on the November 3, 2020 election ballot as a candidate for the House of Representatives.[1] Pennsylvania Law requires all candidates for the United States House of Representatives to collect 1,000 signatures from registered voters to appear on the ballot.[2] The nominating papers must be submitted to the Secretary of the Commonwealth by the filing deadline[3]; this election cycle, the filing deadline is August 3, 2020.[4]

Mr. Acosta does not challenge the Governor's authority to issue emergency orders in response to a statewide emergency.[5] But with registered voters ordered to stay at home until recently, Mr. Acosta pleads he cannot share his political platform with registered voters and have his paperwork signed.[6] Even when the emergency orders expire (as they did on Saturday, June 5, 2020), Mr. Acosta alleges he still does not want to interact with registered voters because there is no vaccine for COVID-19 and his cerebral palsy and asthma place him at a higher risk for contracting a severe coronavirus infection.[7] Mr. Acosta does not plead how many signatures he collected before the Governor issued the emergency orders. Mr. Acosta also does not plead whether he attempted to collect signatures while the executive emergency orders were in place.

Mr. Acosta asks us to order Governor Wolf and Secretary Boockvar to exempt him from Pennsylvania's signature requirement and place him on the November 3, 2020 general election ballot.[8] Mr. Acosta claims he is entitled to this extraordinary relief because his "employer" is violating the Civil Rights Act of 1964 and discriminating against him under the Americans with Disabilities Act by enforcing the signature requirement amid the COVID-19 pandemic.[9]

## II.    Analysis

As he has done in the last couple of years with no success, Mr. Acosta sued without paying the required fees and then moved to proceed *in forma pauperis* under 28 U.S.C. § 1915.[10] We granted him leave to proceed following review of his sworn but curious declaration of income and assets.[11]  Congress requires, upon granting him leave to proceed without paying the fees, we must screen his complaint for merit. If his claim lacks merit, we dismiss before causing the Clerk of Court to issue summons, the Marshal to effect service, and the defendants to incur costs and fees in responding. When considering whether to dismiss a complaint for failure to state a claim under § 1915(e)(2)(B)(ii), we use the same standard used under Federal Rule of Civil Procedure 12(b)(6).[12] "'[A] complaint must contain sufficient factual allegations, taken as true, to 'state a claim to relief that is plausible on its face.'"[13] "We accept all factual allegations in the complaint as true and construe those facts in the light most favorable to the plaintiff."[14]  We are directed by our Court of Appeals to be "mindful of our 'obligation to liberally construe a *pro se* litigant's pleadings …'"[15]

The issue is whether Mr. Acosta states a claim for employment discrimination because he claims to be unable to access potential voters to sign his nominating papers. We begin by taking judicial notice of two facts concerning this year's election: Pennsylvania requires individuals seeking to appear on the ballot as a candidate for the United States House of Representatives to collect signatures from at least one thousand registered voters.[16] Candidates for this election cycle must submit the signed paperwork with the Secretary of the Commonwealth by August 3, 2020.[17]

A.   **Mr. Acosta cannot bring an employee discrimination claim against Pennsylvania's Governor and Secretary.**

Mr. Acosta seeks to be placed on the ballot because the Commonwealth's signature requirement during the COVID-19 pandemic violates his rights as an employee, or an applicant for a job, to be free from discrimination based on the civil rights and disabilities law.

Mr. Acosta sues the Commonwealth's Governor and Secretary arguing they discriminate against him in employment under the civil rights and disabilities law.  But they are not his employer.[18]  He is not even an applicant for a job with them or the Commonwealth.[19]  He seeks to run for public office in the federal government.

B.   **Mr. Acosta cannot state a civil rights claim.**

Mr. Acosta alleges the Commonwealth's Governor and Secretary are depriving him of his civil rights as his employer.  His claim is frivolous.

Congress passed the Civil Rights Act of 1964 to provide all persons within the jurisdiction of the United States "full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens."[20] Because Mr. Acosta alleges his "employer" is violating the Civil Rights Act of 1964, we infer Mr. Acosta alleges a claim under Title VII of the Civil Rights Act of 1964, which is the statute's title addressing equal employment opportunities.

But Mr. Acosta's fails to state a claim under Title VII of the Civil Rights Act of 1964. The purpose of Title VII of the Civil Rights Act of 1964 is to prohibit an employer from "discriminat[ing] against any individual … because of such individual's race, color, religion, sex, or national origin[.]"[21] But in his complaint, Mr. Acosta does not allege to be harmed because of his race, color, religion, sex, or national origin. Even if he sued an employer, we cannot infer Mr. Acosta's claim under Title VII of the Civil Rights Act of 1964 because he does not plead his race, color, religion, sex, or national origin.

### C.   Mr. Acosta fails to state an Americans with Disabilities Act claim.

Mr. Acosta pleads for placement on the ballot because the Commonwealth's signature requirement during the COVID-19 pandemic constitutes employment discrimination under Title I of the Americans with Disabilities Act of 1990.[22]  This claim is frivolous.

Congress passed the Disabilities Act, in part, "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities[.]"[23] Congress defines a "disability" as "a physical or mental impairment that substantially limits one or more major life activities of such individual[.]"[24] Because cerebral palsy is a medical condition affecting a person's ability "to move and maintain balance and posture"[25] and asthma is a disease affecting lung capability,[26] we infer Mr. Acosta's alleged disabilities to fall within the scope of a "disability" under the Act.

But Mr. Acosta fails to state a claim for which relief can be granted under the Americans with Disabilities Act. Like his civil rights claim, the Act exempts "the United States, a corporation wholly owned by the government of the United States, or an Indian tribe" as an "employer" as defined by the statute.[27] Perhaps Mr. Acosta believes running for public office in the federal government is similar to applying for a job in the private sector, but this view is mistaken. The United States is neither Mr. Acosta's prospective nor current "employer." We cannot grant relief for a candidate alleging the United States as an "employer" is discriminating against Mr. Acosta under the Act.  He is also suing the Governor and Secretary alleging they are discriminating against him.  They do not seek to hire him. He is not seeking Commonwealth office.

Even if we accept Mr. Acosta's claim alleging the Commonwealth's signature requirement in the current COVID-19 pandemic is difficult to satisfy, Mr. Acosta still fails to allege how the state's ballot access framework discriminates against him. The Commonwealth imposes the same

signature requirement on all individuals working to secure a place on the ballot as a candidate for the United States House of Representatives. All of Mr. Acosta's competitors are constrained by the COVID-19 pandemic. No state law, emergency order, or coronavirus pandemic has demanded Mr. Acosta cease collecting signatures. Nothing prohibits Mr. Acosta from asking volunteers or hiring assistance to help gather signatures either.[28]

Mr. Acosta's Disabilities Act claim is frivolous.

**D.      Even if Mr. Acosta's claims had merit, we could not grant his requested relief.**

Mr. Acosta requests an order placing him on the ballot. But the Constitution mandates: "[t]he Times, Places and Manner of holding Elections for Senators and Representatives, shall for be prescribed in each State by the Legislature thereof[.]"[29] The Supreme Court has upheld the state's interest to require a candidate to make a preliminary showing of substantial support to qualify for a place on the ballot as an "undoubted right."[30] Although a state must provide candidates with a fair and honest opportunity to secure placement on the ballot, regulating access to the ballot is necessary because "it is both wasteful and confusing to encumber the ballot with the names of frivolous candidates."[31] We will not modify the Commonwealth's signature requirement statute as it reflects the state's valid interest to regulate the manner in which candidates qualify for election ballots. Mr. Acosta fails to show he is entitled to relief. We cannot proceed to afford relief not entitled.

The limited caselaw in the last ten weeks addressing the effect of a global pandemic on nominating papers confirms the state's interest to regulate access to ballots "is of the highest order."[32] For example, in *Garbett v. Herbert*, the plaintiff alleged the state's ballot access framework applied during the COVID-19 pandemic prevented her from gathering the necessary 28,000 signatures to appear on the ballot as an independent candidate in the 2020 Utah gubernatorial election.[33] Like Mr. Acosta, the plaintiff asked for relief in the form of automatic

placement on the ballot.[34] The court confirmed the state's compelling interest to regulate elections ensuring candidates who "demonstrate a modicum of voter support before securing a place on a ballot."[35] The court then denied plaintiff's proposed relief as "insufficient to demonstrate a threshold showing of support under the circumstances."[36]

The District Court for the Northern District of Illinois reached a similar holding in *Libertarian Party of Illinois v. Pritzker*.[37] The plaintiffs, representing the Libertarian Party of Illinois and the Illinois Green Party, sued the Illinois governor alleging his emergency stay-at-home order to mitigate the COVID-19 pandemic prevented candidates from gathering the necessary number of signatures to appear on the ballot in the November 2020 election.[38] The plaintiffs' proposed relief asked the court to modify the state's signature requirement law because of the coronavirus pandemic.[39] The court upheld the state's ballot access framework, ruling the state had a compelling interest to pass election laws measuring whether a new party or independent candidate received a modicum of public support sufficient to warrant ballot access.[40] The court rejected plaintiffs' relief of automatic placement on the ballot because "[s]uspending entirely the signature requirement without requiring candidates to otherwise demonstrate historical support" would require the court to modify state election law procedures "beyond [our] typical variations."[41]

The District Court for the Southern District of New York found similar grounds in denying relief to appear on the ballot based on COVID-19 emergency executive orders in *Murray v. Cuomo*.[42] The plaintiff alleged she could not satisfy New York's ballot access laws to appear on the state's primary election ballot as a candidate for the United States House of Representatives because of the governor's stay-at-home order to reduce the spread of COVID-19.[43] The court

considered the plaintiff's proposed relief to alter the state's ballot access framework.[44] The court recognized "[o]f particular importance, this is Ms. Murray's second attempt to use the courts to have her name placed on the June 23 [primary election] ballot."[45] The court held "[t]he public interest is served by respecting the State's interest and expertise in regulating elections"[46] and refused to modify state election law restrictions. The plaintiff, the court concluded, "need[s] to comply with all portions of the Election Law."[47]

We agree with our colleagues in Utah, Illinois, and New York. We also distinguish Mr. Acosta's claims as a candidate for public office from registered voters raising absentee ballot voting claims amid the COVID-19 pandemic. The Supreme Court protects the right of voters to participate in an election by absentee ballot rather than attending an official polling station to cast a vote.[48]

But seeking to be on the ballot is a different issue; the state's interest to regulate ballots is necessary because the compelling interest allows states to "avoid[] confusion, deception, and even frustration of the democratic process at the general election."[49] And most recently during the COVID-19 pandemic, the Supreme Court ruled the state interest must be upheld when a major natural disaster coincides with an election because "when a lower court intervenes and alters the election rules … close to the election date … this Court, as appropriate [will] correct the error."[50] Even if Mr. Acosta's claims had merit, we are bound not to circumvent the Commonwealth's signature requirement statute. Mr. Acosta fails to show entitlement to relief.

## III.   Conclusion

Mr. Acosta *pro se* sues the Governor and Secretary of the Commonwealth, challenging Pennsylvania's signature requirement procedure during the COVID-19 pandemic as violating his rights as a job applicant under the Civil Rights Act of 1964 and the Americans with Disabilities

Act. His claim is patently frivolous.  Mr. Acosta failed to state a claim upon which relief can be granted. We dismiss with prejudice as we cannot conceive of a claim which is not futile after providing Mr. Acosta a second try.  Given his serial litigious history over the past three years of frivolous claims and appeals, and after affording him leave to amend and now reviewing a frivolous amendment, we may find it difficult to certify an appeal from today's Order as taken in good faith.[51]

---

[1] We use the term "nominating papers" to reflect the Commonwealth's statutory language. In the Commonwealth's election code, major political party candidates file "nominating petitions" to appear on the primary election ballot. 25 Pa. Stat. and Cons. Stat. Ann. § 2872.1 (West 2020). Minor political party and independent candidates file "nominating papers" to appear on the general election ballot. 25 Pa. Stat. and Cons. Stat. Ann. § 2911(b), 2872.2 (West 2020).

[2] 25 Pa. Stat. and Cons. Stat. Ann. § 2872.1(12) (West 2020).

[3] *Id.,* § 2913.

[4] Although nominating papers must be submitted by August 1 in an election year, the Department of State extended the deadline to August 3, 2020 because August 1 falls on a Saturday in 2020. *See Constitution Party of Pennsylvania v. Cortes*, 116 F. Supp. 3d 486, n.11 (E.D. Pa. 2015). *See generally* Bureau of Elections and Notaries, *2020 Pennsylvania Elections Important Dates to Remember*, Commonwealth of Pennsylvania Department of State (Mar. 27, 2020), https://www.dos.pa.gov/VotingElections/CandidatesCommittees/RunningforOffice/Documents/2020/2020%20important%20dates.pdf.

[5] ECF Doc. No. 1, at p. 4; *See generally* 35 Pa. Stat. and Cons. Stat. Ann. § 7301 (West 2020).

[6] ECF Doc. No. 1, at p. 4.

[7] *Id.*; Because the executive emergency orders expired on Saturday, June 5, 2020, we must consider whether Mr. Acosta's case is now moot, meaning Mr. Acosta pleads a "live" dispute, which "must be extant at all stages of review, not merely at the time the [case] is filed." *Summers v. Earth Island Institute*, 555 U.S. 488, 490 (2009); *Steffel v. Thompson*, 415 U.S. 452, 459 n.10 (1974). We infer Mr. Acosta pleads his case presents an unresolved "live" dispute so it is not moot.

We are bound to review whether a case is moot because "the requirement of Article III of the Constitution under which the exercise of our judicial power depends upon the existence of a case of controversy." *North Carolina v. Rice*, 404 U.S. 244, 246 (1971) (quoting *Liner v. Jafco, Inc.*, 375 U.S. 301, 306 n.3 (1964)). *See* U.S. Const. art. III, § 2, cl. 1.  Our analysis will result in one of two possibilities: the "live" dispute Mr. Acosta alleges has since been resolved, so his case is

moot and we must now dismiss; or the "live" dispute Mr. Acosta alleges has not been resolved, so his case is not moot and we may consider what relief, if any, is available. We hold the "live" dispute Mr. Acosta alleges has not been resolved, so his case is not moot.

To evaluate whether a case is moot, our Court of Appeals has created a two-prong test. *New Jersey Turnpike Authority v. Jersey Central Power and Light*, 772 F.2d 25, 30-31 (3d Cir. 1985). A moot case satisfies both elements of the two-prong test because there is no "live" dispute; a non-moot case fails both elements of the two-prong test because there is a "live" dispute.

The "live" dispute alleged in Mr. Acosta's case is not moot under the test's first prong. Under the first prong, a case is moot when "the alleged violation has ceased, and there is no reasonable expectation that it will recur." *Id.* The "alleged violation" alleged today is the Governor's enforcement of the Commonwealth's signature requirement in light of the executive emergency orders to mitigate the COVID-19 pandemic. But even though the executive emergency orders ceased on Saturday, June 5, there is still a "reasonable expectation" the Governor could reinstate the executive emergency orders or issue similar restrictive measures before the November 2020 election. For example, the Governor may reinstate the executive emergency orders because infection rates may increase with now-relaxed social distancing guidelines despite there being no vaccine to COVID-19. If the Governor were to exercise such executive authority to mitigate the COVID-19 pandemic again, Mr. Acosta would be subjected to its requirements once more. The "alleged violation" would recur.

The "live" dispute alleged in Mr. Acosta's case is not moot because it fails the test's second prong as well. As case is moot when "interim relief or events have completely and irrevocably eradicated the effects" of the actual controversy of the alleged violation." *Id.* From the time Mr. Acosta filed his amended complaint, there has been no interim relief to "completely and irrevocably" eliminate the effects of the "alleged violation." We are not aware of a vaccine to contain COVID-19. In the interim, no state law modifies the timeline or the ballot access framework of the upcoming November 2020 election. The Governor and Secretary continue to enforce the state's signature requirement candidates must satisfy to secure a place on the ballot. The "live" dispute alleged in Mr. Acosta's case is not moot. By failing both prongs of the test articulated by our Court of Appeals, Mr. Acosta alleges a "live" dispute, so his case is not moot.

---

[8] ECF Doc. No. 12, at p. 5.

[9] *Id.*

[10] Mr. Acosta is not a stranger to challenging Pennsylvania election procedures in this Court without paying filing fees and having his claims summarily dismissed. Three years ago, Mr. Acosta alleged state officials coerced, intimidated, and engaged in misconduct in a March 21, 2017 special election for Pennsylvania State Representative for the 197th Legislative District (covering parts of Philadelphia County) in *Acosta v. Democratic City Committee*, 288 F. Supp. 3d 597, 613-15, 619-20 (E.D. Pa. 2018). Mr. Acosta alleged state actors violated the First and Fourteenth Amendments. *Id.* at 620. He asked Judge Slomsky declare the results of the special election null and void, order a new special election, and bar the winner of the special election from running as a candidate in the proposed new special election as well as all subsequent elections for the next ten years. *Id.* In

January 2018, Judge Slomsky dismissed the complaint for failure to state a claim upon which relief could be granted with leave to amend. *Id.* at 653-54. In August 2018, Judge Slomsky dismissed Mr. Acosta's amended complaint with prejudice for failing to state a claim upon which relief could be granted. *Acosta v. Democratic City Committee*, No. 17-1462, 2018 WL 4178522, at *1, n.11 (E.D. Pa. Aug. 30, 2018). The amended complaint included a motion for default judgment, and Judge Slomsky denied this request. *Id.* at *12. Mr. Acosta appealed Judge Slomsky's holding. *Acosta v. Democratic City Committee*, 767 Fed. Appx. 392 (3d Cir. 2019). Before ruling on the appeal, our Court of Appeals allowed Mr. Acosta's motion to supplement his amended complaint with an additional legal argument. *Id.* at 394. Mr. Acosta then alleged Judge Slomsky's earlier rulings to dismiss violated his right to a jury trial under the Seventh Amendment. *Id.* at 393-94. Our Court of Appeals rejected all of Mr. Acosta's legal arguments, holding, "[e]ach of the claims that [Mr.] Acosta does raise lacks merit." *Id.* at 393.

Although he is not a lawyer, Mr. Acosta also tried to represent Solomon Marcelles Miller in two cases over the past two years. He first tried to represent Mr. Miller in suing Todd Burt, Rob Mahallati, Bank of America, and M&T Bank for fraud, when Mr. Miller named Mr. Acosta as his legal agent. *Miller v. Burt*, No. 18-3044, 2018 WL 4100680 (E.D. Pa. Aug. 27, 2018). Judge Pratter dismissed the complaint. *Id.* Mr. Miller then appealed, and before issuing an opinion, our Court of Appeals precluded Mr. Acosta from representing Mr. Miller. In March 2019, our Court of Appeals affirmed Judge Pratter's holding. *Miller v. Burt*, 765 Fed. Appx. 834 (3d Cir. 2019) (per curiam) (noting "Acosta is not a licensed attorney and he therefore cannot represent Miller on appeal.").

In January 2019, Mr. Miller *pro se* sued PECO, Philadelphia Water Revenue, and Philadelphia Gas Works alleging he paid for utility services, but these utilities threatened to stop providing utility services unless Mr. Miller paid the companies. *See Miller v. PECO Exelon*, No. 19-0231, 2019 WL 952273 (E.D. Pa. Feb. 26, 2019). On February 1, 2019, Mr. Acosta then moved to appoint executors asserting to have a power of attorney "for beneficiary of the Mr. Miller's estate." *Id.* at *2. On February 6, 2019, Judge McHugh denied Mr. Acosta's motion. *Id.* at *2. A week later, Mr. Acosta filed an amended "motion appointing executors," this time emphasizing he held a power of attorney for Miller and Miller's "estate, his creditors, or the creditors of his estate." *Id.* On February 26, 2019, Judge McHugh dismissed everything from Messrs. Miller and Acosta— the complaints, the motions, the amendments—as "legally baseless." *Id.* at *4. Mr. Miller appealed, but in August 2019, our Court of Appeals affirmed Judge McHugh's holding. *Miller v. PECO Exelon*, 775 Fed. Appx. 37 (3d Cir. 2019) (per curiam) (noting "it was unclear whom Acosta was claiming to represent and that, in any event, he may not represent Miller given the fact that he is not an attorney.").

[11] Mr. Acosta swears he has no assets other than $30 in the bank and receives $600 in monthly disability payments but incurs $1529 in monthly expenses and supports minor son. ECF Doc. No. 4. We granted him leave to again proceed *in forma pauperis* subject to further review of the accuracy of his sworn financial statement. ECF Doc. No. 5.

[12] *Elansari v. Univ. of Pennsylvania*, 779 F. App'x 1006, 1008 (3d Cir. 2019) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)).

---

[13] *Id.* (quoting *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012)).

[14] *Id.*

[15] *Capogrosso v. Supreme Court of New Jersey*, 588 F.3d 180, n.1 (3d Cir. 2009) ("Nevertheless, we remain mindful of our obligation to construe a *pro se* litigant's pleadings liberally.") In deciding a motion to dismiss under Rule 12(b)(6), we accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party, but we "are not compelled to accept unsupported conclusions and unwarranted inference, or a legal conclusion couched as a factual allegation." *Castleberry v. STI Group*, 863 F.3d 259, 263 (3d Cir. 2017) (quoting *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Edinboro Coll. Park Apartments v. Edinboro Univ. Found.*, 850 F.3d 567, 572 (3d Cir. 2017) (quoting *In re Vehicle Carrier Serv. Antitrust Litig.*, 846 F.3d 71, 79 n.4 (3d Cir. 2017)). A claim satisfies the plausibility standard when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Maiden Creek Assoc., L.P. v. U.S. Dep't of Transp.*, 823 F.3d 184, 189 (3d Cir. 2016) (quoting *Ascroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While the plausibility standard is not "akin to a 'probability requirement,'" there nevertheless must be more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

[16] 25 Pa. Stat. and Cons. Stat. Ann. § 2872.1(12) (West 2020).

[17] *See generally* Bureau of Elections and Notaries, *2020 Pennsylvania Elections Important Dates to Remember*, Commonwealth of Pennsylvania Department  of State (Mar. 27, 2020), https://www.dos.pa.gov/VotingElections/CandidatesCommittees/RunningforOffice/Documents/2020/2020%20important%20dates.pdf

[18] 42 U.S.C. § 2000e(f) ("The term 'employee' means an individual employed by an employer[.]"); 42 U.S.C. § 12111(4) ("The term 'employee' means an individual employed by an employer.").

[19] "[A]n unlawful employment practice" could include "limit[ing] … applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(2).

[20] 42 U.S.C. §1981(a) (2020).

[21] *Id.* § 2000e-2(a)(1).

[22] ECF Doc. No. 12, at p. 5.

[23] 42 U.S.C. § 12101(b)(1) (2020).

[24] *Id.* §12102(1)(A).

[25] *Cerebral Palsy (CP)*, Centers for Disease Control and Prevention (last updated Apr. 30, 2019), https://www.cdc.gov/ncbddd/cp/facts.html.

[26] *Asthma*, Centers for Disease Control and Prevention (last updated May 7, 2020), https://www.cdc.gov/asthma/default.htm.

[27] 42 U.S.C. § 12111(5)(B) (2020).

[28] *See, e.g.*, *Graveline v. Johnson*, 336 F. Supp. 3d 801, 816 (E.D. Mich. 2018) (mentioning plaintiff lobbied 231 volunteers and paid for a signature-gathering firm to help collect the 14,157 signatures necessary to appear on the ballot); *Garbett v. Herbert*, No. 20-245, 2020 WL 2064101, at *2 (D. Utah Apr. 29, 2020) (noting plaintiff contracted with two firms to collect 50,000 signatures).

[29] U.S. Const. art. I, § 4, cl. 1.

[30] *Anderson v. Celebrezze*, 460 U.S. 780, n.9 (1983).

[31] *Id.*; *See, e.g. Jenness v. Fortson*, 403 U.S. 431, 442 (1971).

[32] *Lubin v. Panish*, 415 U.S. 709, 715 (1974) (citing *Bullock v. Carter*, 405 U.S. 134, 144-45 (1972)).

[33] *Garbett v. Herbert*, No. 20-245, 2020 WL 2064101, at *1, *15 (D. Utah Apr. 29, 2020).

[34] *Id.*

[35] *Id.* at *17.

[36] *Id.*

[37] *Libertarian Party of Illinois v. Pritzker*, No. 20-2112, 2020 WL 1951687 (N.D. Ill. Apr. 23, 2020).

[38] *Id.* at *1.

[39] *Id.*

[40] *Id.* at *4.

[41] *Id.*

[42] *Murray v. Cuomo*, No. 20-03571, 2020 WL 2521449 (S.D.N.Y. May 18, 2020).

[43] *Id.* at *1.

[44] *Id.*

[45] *Id.*

[46] *Id.* at *15.

[47] *Id.* at *13.

[48] *See, e.g.*, *Republican National Committee v. Democratic National Committee*, -- U.S.--, 140 S. Ct. 1205, 1206 (2020).

[49] *Jenness v. Fortson*, 403 U.S. 431, 442 (1971).

[50] *Republican National Committee*, 140 S. Ct. at 1207.

[51] 28 U.S.C. §1915 (a)(3).