IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ORLANDO A. ACOSTA** | : CIVIL ACTION |
| | : |
| v. | : NO. 20-2528 |
| | : |
| **GOVERNOR TOM WOLF**, *et al.* | : |

# ORDER

AND NOW, this 13th day of July 2020, upon noting our June 30, 2020 Memorandum (ECF Doc. No. 15) miscalculated the number of signatures necessary for appearance on a general election ballot but not materially altering our June 30, 2020 Order (ECF Doc. No. 16) thus warranting correction and to certify a supplemental record consistent with Federal Rule of Appellate Procedure 10(e), it is **ORDERED** the Clerk of Court shall certify this Order for the Court of Appeals to correct or modify the record to: adequately reflect the required number of signatures for the 2020 general election to the House of Representatives in the challenged Congressional District to be 5,752 (not 1,000); and, to clarify our cite to *Libertarian Party of Illinois v. Pritzker*, --- F. Supp. 3d ---, 2020 WL 1951687 (N.D. Ill. Apr. 23, 2020) with no material change or amendment to our Order now on appeal.[1]

KEARNEY, J.

---

[1] We dismissed Mr. Acosta's amended complaint following our second section 1915 screening consistent with Congress's mandate on filings seeking to proceed *in forma pauperis*. Mr. Acosta claimed Governor Wolf and Secretary Boockvar discriminated against him based on his disability by requiring he obtain signatures during COVID-19 stay at home orders before being placed on the ballot as an independent candidate for the United States House of Representatives. After our June 30, 2020 Order but before Mr. Acosta filed his Notice of Appeal, an interested "commentator" wrote a letter which Mr. Acosta filed on our docket, ECF Doc. No. 17-1 noting he believed we erred in calculating the number of signatures for a place on the November 3, 2020 general election ballot as an independent candidate, and in not more fully addressing *Libertarian Party of Illinois v. Pritzker*, --- F. Supp. 3d ---, 2020 WL 1951687 (N.D. Ill. April 23, 2020). After reviewing this letter filed by Mr. Acosta and under our *sua sponte* authority, we correct and modify the record

including our June 30, 2020 Memorandum under Federal Rule of Appellate Procedure 10(e). *Fassett v. Delta Kappa Epsilon (New York)*, 807 F.2d 1150, 1165 (3d Cir. 1986) (authorizing the district court to augment the record "when a material matter is omitted by error or accident").

We correct our mistaken cite to the number of signatures Mr. Acosta must collect under Pennsylvania law to be placed on the November 3, 2020 general election ballot for his Congressional District. As is now apparent on the record, ECF Doc. No. 17-2, the number of signatures Mr. Acosta must collect to appear on the ballot for his Congressional District in November 2020 is 5,752 signatures. For the general election, the Commonwealth mandates independent candidates for non-statewide offices obtain signatures from "at least equal to two per centum of the largest entire vote cast for any officer ... elected at the last preceding election in said electoral district." 25 Pa. Stat. and Cons. Stat. Ann. § 2911(b). Mr. Acosta's address indicates he lives in the Commonwealth's Third Congressional District; in the last preceding election—the 2018 United States elections—Congressperson Dwight Evans received the largest share of the entire vote cast for the seat with 287,610 votes. Because two per centum of 287,610 is 5,752.2, Mr. Acosta must obtain 5,752 signatures on his nominating papers to appear on the ballot as an independent candidate for the seat representing the Commonwealth's Third Congressional District in the House of Representatives.

We also address our incomplete discussion of *Libertarian Party of Illinois v. Pritzker*, --- F. Supp. 3d ---, 2020 WL 1951687 (N.D. Ill. Apr. 23, 2020). In our June 30, 2020 Memorandum, we cited Judge Pallmeyer's observation in *Libertarian Party of Illinois*: "'[s]uspending entirely the signature requirement without requiring candidates to otherwise demonstrate historical support' would require the court to modify state election law procedures 'beyond [our] typical variations.'" ECF Doc. No. 15 at 7 (quoting *Libertarian Party of Illinois*, 2020 WL 1951687, at *4). Judge Pallmeyer ordered the plaintiffs—third-party candidates with demonstrated historical support for gathering the necessary signatures for ballot placement—to be listed on the ballot after the parties submitted an agreed order. Judge Pallmeyer found this relief properly balanced the State's interests in "preventing voter confusion, blocking frivolous candidates from the ballot, and otherwise protecting the integrity of the upcoming election," with the burdens placed on new party and independent candidates' ability to collect signatures in light of the governor's stay-at-home orders. *Libertarian Party of Illinois*, 2020 WL 1951687, at *5.

While we address to conform to the record, we need not revisit or change our dismissal under section 1915. Unlike *Libertarian Party of Illinois*, Mr. Acosta's ultimately frivolous amended complaint grieved issues relating to his disabilities under federal statutes against Governor Wolf and Secretary Boockvar. Even when liberally construing Mr. Acosta's amended complaint as presenting a constitutional claim for ballot access, Mr. Acosta failed to plead facts supporting such a claim. When reviewing a constitutional claim to ballot access, "[w]e consider what burden is placed on the rights which plaintiffs seek to assert and then we balance that burden against the precise interests identified by the state and the extent to which these interests require that plaintiffs' rights be burdened." *Rogers v. Corbett*, 468 F.3d 188, 194 (3d Cir. 2006) (announcing rule based on *Anderson-Burdick* framework). Mr. Acosta has an associational right to seek signatures for placement on the ballot; but unlike *Libertarian Party of Illinois*, Mr. Acosta failed to plead specific burdens to this right—he pleaded no historical support for his candidacy nor a continuing stay-at-home requirement. Mr. Acosta can secure signatures from June 5 to August 3, 2020 with no state actor impeding his access. We saw no existing right for automatic ballot placement but, even if

2

Mr. Acosta has such a right, it must be burdened by the identified strong, nondiscriminatory state interests to protect the public from a pandemic for a limited period (now lifted) as well as avoid ballot confusion. ECF Doc. No. 15 at 6; *see also Rogers*, 468 F. 3d at 194 "(the right to ballot access . . . may be limited in accord with appropriate state interests, and that limitations imposed in furtherance of such interests need not be the most narrowly drawn as long as they are nondiscriminatory and reasonable in light of the relevant burden."). Mr. Acosta did not plead facts demonstrating a viable case supporting his requested relief of automatic ballot placement. No state actor is impeding his ballot access. Our correction of this analysis of *Libertarian Party of Illinois* does not disturb our June 30, 2020 Order and reasoned Memorandum.